Good morning, Your Honors, and may it please the Court, my name is Todd Tucci and I represent Plaintiff Appellant's Western Watersheds Project in this matter. I'd like to retain two minutes for rebuttal. All right. Thank you. In the adversary adjudication underlying this appeal, Western Watersheds successfully reversed and remanded five routine BLM decisions that authorized the construction of 15 range developments on the public land and modified and altered the grazing scheme across the hard trigger allotment in southeastern, southwestern Idaho, pardon me. Now, despite the success, the IBLA denied Western Watersheds' motion for attorneys' fees, finding that the so-called license exception, if you will, located at 5 U.S. Code 504B1C precludes it. This decision should be reversed for four reasons. First, it's inconsistent with the plain language of EJA. Second, it creates a definition of adjudication that runs afoul of the Equal Access to Justice Act, the APA, and the Department of Interior's own regulations and, in fact, would lead to two different definitions of adjudication within EJA. Third, it ignores the fact that BLM final decision modified and amended grazing regulations and invoked the BLM's own regs regarding modification and amending. And finally, the IBLA failed to examine whether there was a partial recovery of fees for the parts of the adjudication that were outside of the license exception. Indeed, the IBLA's interpretation would undermine EJA's fee-shifting provision in administrative proceedings, which Senator DeConcini, who was a chair of the committee hearing this, called a, quote, vital weapon in eliminating the financial disincentives to those who would challenge unjustified agency decisions. As this panel well knows, the starting point in statutory interpretation is the language of the statute itself. And in this case, most of the issues under 504, under the Equal Access to Justice Act administrative proceedings, are not in dispute. There's no dispute that Western Watershed's appeal was an adjudication, no dispute that it arose under Section 554 of the APA, and there's no dispute that BLM was represented by counsel during it. So this boils down to whether the license exception precludes the recovery of fees. So starting with the language of the license exception is the appropriate point. Section 504, pardon me, 5 U.S. Code Section 504B1C reads, and defines an adversary adjudication as an adjudication under Section 554 of the APA in which the position of the United States is represented by counsel, but excludes an adjudication for the purpose of granting or renewing a license. That's the operative language in this appeal. You don't think a grazing permit is a license? No, a grazing permit is a license, but the adjudication here is over Western Watershed's appeal. Western Watershed's initiated the adjudication under 43 CFR 4.470.1, and that's where the adjudication started. So you only have to look to the purpose of the adjudication, and there's no dispute that the purpose of the adjudication was to enforce the National Environmental Policy Act, the Federal Land Policy Act. And how would you do that? Through the granting or, in this case, the denial of the permit with provisions? Well, I mean, what would be the result? You want to enforce the environmental laws, correct? Yes. And the action that you're challenging relates to a grazing permit, correct? It was a final decision, yes. Final decision, which you appeal from is the petition. You appeal a petition for stay of the Owehee Field Managers EA, and that final decision is a grazing permit decision, correct? There's two different things. There's a final decision under BLM's regulations located at 43 CFR 4.4160.1, and there's a grazing permit. This is a grazing decision that we appealed, yes. And the decision authorized the construction of 15 range developments and altered and modified the grazing scheme that the permittees were authorized to graze under. Are you asking the panel in determining the purpose of the administrative proceeding to look to the reasons why the challenge was brought? Thank you, Your Honor. Under 5 U.S. Code 504b1c, the language is you look to the purpose. It only excludes an adjudication for the purpose of granting or renewing a license. Now, BLM tries to, or rather, IBLA and BLM, federal defendants, try to sidestep this by saying the adjudication was over a routine BLM grazing decision. That's the adjudication that IBLA argues is the purpose of which determines application or exemption of the license exception. I'm trying to frame these two things so that at least for this judge I can understand them. We agree that what we're focusing in on is the meaning of the word purpose. And it seems to me there's two ways you can look at purpose. Purpose could be the end result of the proceeding, that is, the grant or approval of a license, in this case a grazing permit. That's one way to define it. Another way to define it is the reason why the challenge is brought because of the concern of those challenging the issuance of the permit are concerned about its environmental impacts. And you're on the latter side of that, I take it. Yes, sir. And with respect, the former makes no sense because there was no proceeding prior to my client's initiation of a proceeding. So let me just ask you then, under your interpretation, if a neighbor commences a proceeding with respect to the terms of the other neighbor's grazing permit and his purpose in doing so is not the granting of the permit, of course, because the neighbor isn't going to get the permit, you know, the challenging neighbor, but the neighbor is doing it because of concerns about noise and concerns about the terms of the grazing permit that actually affect, for example, the grass in the area and some of the scrub, that neighbor, in your view, would fall in the same box as your client, I take it. That's true. And I think, Your Honor, the next question would perhaps would be, but if the permittee himself or herself challenged it, I suspect IVLA is going to argue under my interpretation, they would be foreclosed from recovering fees. And that's the challenge that I think IVLA is missing the boat here. Because for a variety of reasons, the legislative history of the Equal Access to Justice Act shows that Congress intended Egypt to apply broadly and the exceptions to apply very narrowly. And the U.S. Administrative Conference, in interpreting the Equal Access to Justice Act, limited the exception, the licensing section we're talking about, to initial licensing proceedings. Now, if a rancher or a permittee on the public lands is getting a modified or altered permit, that is not an initial licensing proceeding. And, in fact, IVLA previously acknowledges in the Cosmati case, in a very similar factual circumstance, the IVLA found that the BLM's decision was a modification. And so when you look to the expressed statutory language, as well as the underlying legislative history, it's clear that this exception was supposed to be narrowly applied to initial licensing proceedings. And the modification and alteration of an existing permit does not fall within that. Do you have some cases outside the grazing permit area, which might not be as common, where someone who's almost, I would say you're almost like an intervener, but I recognize you were the party that went forward initially. But do you have cases where an organization like yours or someone equivalent was challenging a license, say in the nuclear or some other area, in which they were successful in changing the terms of the license, and then they recovered fees? Thank you, ma'am. Yes. In fact, the Tuladad Grazing Association case out of the IVLA, which postdates the Toman case, the IVLA awarded fees to an intervener. Now, as Your Honor, you acknowledge we're not the intervener here. We're the initiator. We are the appellant. But in Tuladad Grazing Association, IVLA awarded interveners fees when their intervention led to a modification or change in the underlying final decision. So you think that their internal decision to do that binds them in this case? No, sir. So I think the fact that the IVLA's analysis has been inconsistent over time, from the Tuladad Grazing Association in 2004 back to the Toman case, which is largely what they rely on, and then if you look at the Hart v. BLM case, which we also identify in the brief, which IVLA noted that appeals of grazing decisions could form the basis of attorney's fees, although in that case they found the appellant was not a prevailing party. All of those suggest that there should be absolutely no difference to the IVLA's interpretation. Okay, but you didn't answer my question, which was, are there any federal court cases where you have somebody who comes in as an initiator with respect to the terms of a license is successful, and then the fees are awarded or not awarded? It doesn't have to be in a BLM case, but any federal licensing proceeding. Well, thank you, Your Honor. In the Mendenhall case. Oh, thank me. You could just give me the answer. In the Mendenhall case, the Ninth Circuit awarded fees when an appellant challenged the revocation of his permit. And the Ninth Circuit did not get tripped up over whether he was challenging a license or a permit because he was challenging the revocation of a permit. I think it was Judge F. Scanlon. That case is 92 F. 3rd 871. It's important to note that the implications and the consequences of ruling for the IVLA in this case is that there will be two definitions. Are there any other cases? That's the only one I was able to find, Your Honor. There will be two definitions of adjudication under the Equal Access to Justice Act. Under 5 U.S. Code 504B1B, an adjudication would begin when the administrative appeal is filed. And then under 5 U.S. Code 504B1C, an adjudication would be initiated by the agency's underlying decision-making process. The agency's underlying decision-making process is not an adjudication. It meets none of the requirements of 504. It meets none of the requirements of the APA. It does not arise under 5 U.S. Code 554. And it doesn't even meet the Department of Interior's own regulations located at 43 CFR 4.20 and 4.470, which direct procedures appropriate for adjudications and or proceedings. In the absence of questions, I have a little time I'd like to retain. Let me ask just one question before we leave. I understand very well your opponent's position. It's my understanding that for us to determine the purpose of the purpose, we looked at the nature of the actions being challenged. Your opponent contends the action being challenged was the renewal of grazing permits. And I'm still not quite clear what you believe the action being challenged was. The action being challenged, Your Honor, was the final, BILOM's final decisions. But that is not what, under the plain language of EJ, that is not what granting or awarding fees turns on. Granting or awarding a fee turns on the purpose of the adjudication. The only adjudication in this case was the one initiated by Western Watersheds Project. And just to revisit, sir. That's okay. I understand. That's fine. You might have saved their meeting. Thank you. May it please the Court. My name is Serena Case Hargrove, and I represent the United States in this matter. To answer Judge McEwen's question, first of all, there is no federal court case in which an intervener or a third party, someone who isn't either receiving the permit as a first party, has received EJF fees in circumstances like this. Is there a case where they were denied the fees? No. This is a case of first impression in the federal courts. There are agency cases, however. There are two agency cases, In Re, a matter of public service company, which was an EPA appellate board, and then also the Tomon case, which was a similar case before the IVLA, in which these two very diverse agencies came to the same conclusion, that interveners were, and I understand they don't like the term interveners, but that parties who were not the permittees who intervened, even if they prevailed, did not receive EJF fees if they had intervened in a proceeding or appealed in a proceeding that was for the purpose of granting a license. Let me see if I understand the government's position. Let's suppose that there's a mining company and they need a permit to extract some materials from forest service land or park service land or something like that. If they meet certain conditions, they're entitled to get the permit. If they apply for the permit, an organization such as the one in this case comes in and says there's been no environmental assessment, there's been no EIS, there's been nothing, this has horrible environmental consequences to public lands, and the result of all of this is that at the end of the day the mining company gets its permit, but they've had to agree to satisfy every concern that the organization has raised. Most people would define that as success. Are you saying in that instance that there would be no fees? Your Honor, yes, I'm saying there would be no fees. However, I'm not saying there would be no fees because there was no success. There was success. They were a prevailing party in the example you gave. And in this case, too, we're not contesting. No, no, there's not. At the end of the day, the mining company, in my example, gets the permit to extract minerals. But in order to get it, they have to agree to satisfy the long list of concerns that an environmental organization which challenges the issuance of the permit. No fees, in your opinion. Well, again, the availability of fees would turn on the statute, 504B1C, and the question would be, first of all, in your mining context, was a hearing required under Section 554? If the answer is yes, you'd go on and ask whether the United States was represented by counsel. If the answer is yes, you'd go on and then you ask, was this an adjudication for the purpose of granting or renewing a license? And so that is the only thing for our discussion here. I would simply focus on the notion that your definition of purpose is what's the end result of the process, and that is the grant or denial of a permit or a license. Precisely, Judge Hawkins, yes. But it's tied in with what the adjudication, what's the purpose of the adjudication. Exactly. And it's objective. So the reason that WWP was allowed to file its appeal is because the Taylor Grazing Act, which this grazing decision, this decision to renew a grazing permit was issued under, requires a hearing under Section 554. And the regulations implementing the Taylor Grazing Act, Regulation 4.470, allows interested parties whose rights will be adversely affected by the decision to renew the grazing permit to appeal. So the very reason they're allowed to appeal is that this is a grazing decision. It's a decision to renew a grazing permit, which they acknowledge is a license. Now, they have various reasons for advancing their appeal. And, again, 4.470 makes a distinction between what allows a party to file an appeal, which is the existence of a final permitting decision, versus the reasons the party has for advancing their appeal, which could be any number of things. It could be NEPA. It could be all kinds of enforcing environmental laws. It could be any number of things. Is it possible under the grazing regulations for a third party to initiate a proceeding where there's no grazing renewal at issue, but in the middle of the grazing permit period, they decide that they want a modification because of some egregious environmental or other problem? Or they go to the agency and establish that the conditions for the grant of the permit are being blatantly violated. Could you do that? I believe you could. And certainly they could petition the agency to modify or revoke a permit. And we've seen that happen in Idaho when conditions have changed. And so then under this statute, if you did that, would that fall under granting or renewing a license? No, Your Honor. Interestingly, it would not. The statute, Congress adopted a very well-established distinction that had long existed when it said, when it excluded proceedings for the purpose of granting or renewing a license. In the legislative history, and then this was embodied in the regulations, both in the administrative conferences and in the agency regulations here, they make a distinction between proceedings in which the agency is seeking to revoke or modify rights, the situation we're discussing, and proceedings in which someone is coming to the agency and seeking rights in the first instance. And a renewal under the APA is an example of that second category. And is this a renewal? Yes. This is a renewal. So the permit holder, the grant is up and they need a renewal in order to continue. Exactly. Subject to various. And that was an interesting question earlier on whether a renewal should be considered a modification or whether it's more like a grant. And there is good precedent under the APA explaining that a renewal is like a new permit because your term is up and you're coming and seeking new rights. So the APA made a distinction between a situation in which the government is going after existing rights that have already been granted. And in those situations, and the legislative history makes this very clear, those were precisely the situations Congress was concerned about, particularly with small businesses. The legislative history is replete with discussions of how small businesses should be allowed to count on rights that have already been granted. And if the government comes in to take away already existing rights, they should be able to vindicate those rights and be reimbursed if they are successful. And it wouldn't matter in that case whether the successful party was the permittee or a third party. That's correct, Your Honor. That's the position we're taking. It's very interesting, though. I've read large quantities of the legislative history, which is substantial. And I couldn't find anywhere in which Congress was thinking about this situation in which you had a third party coming in. But certainly the statute is written broadly enough, we would concede, to cover third parties. They would get fees in that case. Yes, so if the agency were to attempt to revoke an existing license or to modify it and WWP filed an appeal of an agency decision to revoke or not to revoke, then we would agree that they would receive fees. And I guess if your grantee, if the permittee gets the permit, it might be harder to come in and change the conditions later, but literally the day after the permit is granted, you could go in and file suit or initiate an administrative proceeding. And, Your Honor, I'm not sure precisely how that would happen. But my guess is you could certainly as a third party petition the agency to start such proceedings. And Section 558 of the Administrative Procedure Act governs the procedure for those proceedings. Now, interestingly, that Section 558 does not provide a hearing, even in the revocation context in the first instance. The only time you get a hearing and you're therefore under Section 554 is on an appeal. We do not disagree with WWP that the adjudication, the formal adjudication in this case, began when they filed their appeal of the final grazing decision. It is their administrative appeal. Yes. It's nonetheless our position that that appeal was still part of a proceeding that was for the purpose of granting or renewing a license. Because the end result of their appeal, if the final decision they were challenging was affirmed, the end result of their appeal would be that the final decision would transform into a permit and the permit would be renewed. Whereas if they were successful in their appeal, that would not occur. Well, they could still be successful and a permit could issue, but it could issue with changed conditions, correct? Correct. The agency would have to go back and do the process again, especially under a NEPA challenge, which is a procedural challenge. Right. That's correct. But the end result is whether the permit will either be issued or it will not be issued. And so that's our position, that it's, yes, they're correct that the formal proceeding under 554 started with their administrative appeal, but that appeal is part of a broader proceeding for the purpose of granting or renewing a license. Much like a criminal appeal is certainly different than the trial, but when a defendant appeals his conviction, he can do so for a variety of reasons, and there may be numerous motivations for appealing a conviction. But still, no one can appeal unless there is a final order and a conviction, and that appeal will ultimately determine whether the conviction stands. So although it is a separate part of the process of deciding whether the conviction will stand, it is still a part of that process. Now, what WWP is saying is that, I mean, it's kind of akin to, I mean, imagine a defense attorney who strongly opposed a certain punishment as violating the Eighth Amendment was willing to represent the defendant because the attorney wanted to advance that position and change the law. That would be the attorney's reason for representing the defendant. Nonetheless, the attorney couldn't just challenge the Eighth Amendment without a vehicle for doing so, and that's what the district court emphasized here, was that WWP has its own reasons for challenging a final grazing decision, but it's a final grazing decision that they were challenging, and they're bound by that. I would like to note all of the cases make a great deal of sense when examined together, and I've imagined this as I've gone through it as a sort of pie chart of adversary proceedings under Section 554, and what Congress did in Section 504B1C was carve out a small piece of the pie, saying you cannot receive attorney's fees for adjudications that relate to the granting or renewing of a license or that are for that purpose. But it left within the pie proceedings in which licenses were being revoked or altered. So you certainly can receive EJF fees for those. It also left within the pie proceedings in which a person was seeking benefits from the government and appealed that. So when you look at all of the cases that both parties have cited, Bullwinkle in the Seventh Circuit, Nakamura in the CIT Court, In Re, a matter of public service company, and Tomon all fit within the piece of the pie that Congress took out. They were all situations in which licenses were being renewed or granted in the first instance, or that was the question, whether they would be. Now, Mendenhall. So grant or renew, not covered, revocation covered? Yes, Your Honor. And Mendenhall. We're about to talk about Mendenhall. Yes. So Mendenhall is a perfect example of that. That involved the FAA seeking to revoke a pilot's license. Now, that pilot eventually showed that the FAA had done so in bad faith. So he had a license. He had existing rights. The FAA came in and sought to take them away. That was precisely the situation Congress wanted to provide EJF fees for. And Mendenhall got fees, appropriately so, because that was a revocation. Similarly, the D.C. Circuit, and that was the Ninth Circuit case, the D.C. Circuit in Hershey remanded for the determination of fees, but noted that revocations, which was what was going on in that case, should allow for fees, that the license exception wasn't so broad to include revocations. Now, Tula Dodd, which WWP cited as well, involved an amendment, a change to the permit, a modification. So that falls within the pie that is still existing. Now, there are three cases that all involved benefits. And so they, too, are eligible for EJF fees to the prevailing party. And those cases are Egison, Five Points, and Lane versus Department of Agriculture. Those are Ninth Circuit, Seventh Circuit, and Eighth Circuit cases, respectively. They all involve federal program benefits, farm program benefits, loan servicing. And Congress plainly left those kinds of proceedings within the pie for which EJF fees are allowed. So we believe that the case law makes perfect sense when you look at the statutory and the regulatory scheme. The cases fall precisely in line with that distinction we're making. And our case clearly falls within the part of the pie that's accepted because the end goal of this proceeding, the end result, would be to determine whether to grant or renew a license. Thank you. Thank you, Eunice. Mr. Tucci? Very briefly, ER, the excerpt to the record 188 is the final decision I'd issue here. Page 10 of the final decision invokes authority that the BLM relied on in issuing the final decision. And it identifies, it invokes 43 CFR 4110.3 for changes in permitted use. And it invokes 43 CFR 4133.3-3 for modifications for permits and leases. It does not invoke the regulations for renewing, for granting or renewing a permit, save for the transposition of two numbers at 4130.2. And it's in the brief, and I think I've outlined it. But they expressly invoke the authority for permit modification and renew. So, pardon me, permit modification and alteration. So even if this panel were to agree that the purpose of the adjudication is not directed by the purpose of the adjudication, but rather the purpose of the underlying agency action, Western Watershed still prevails. Briefly on this Taylor Grazing Act idea, the idea that the only reason there's a hearing authorized under 504 is because of the Taylor Grazing Act. The Taylor Grazing Act has primary purposes. And the primary purposes were to require the secretary to make provisions for the protection, administration, regulation, and improvement of the public lands. The Department of Interior itself has acknowledged that the primary purpose is protecting and improving conditions, and only the secondary purpose is authorizing livestock grazing on the public lands. That's Public Lands Council v. Babbitt, 10th Circuit, which was affirmed by the Supreme Court. So there's nothing inconsistent with Western Watersheds Project using the authorities under the Taylor Grazing Act to try to protect and preserve the integrity of the public lands. I would point out that on page 183, they say these are the terms and conditions for renewed grazing permits. So that's something we'll grapple with. Thank you. Thank both Council for your arguments. The case just argued, Western Watersheds v. Interior Board, is submitted. And we're adjourned for this morning.
judges: Whelan, Hawkins, McKeown